FAULKNER, Justice.
The plaintiff-appellee, New York Life Insurance Company, filed an interpleader action against Alva S. Frye, Daisy Frye Barnes, and others, seeking, inter alia, an adjudication of the question of who was the lawful first beneficiary under the late Billy R. Frye’s life insurance policy.[1] After an ore tenus non-jury hearing, the trial court entered judgment in favor of Daisy Frye Barnes. AmSouth Bank, administrator of the estate of Alva S. Frye, appeals. We affirm.
The findings and judgment of the trial court must be reviewed in light of the ore tenus rule, by which every presumption is indulged in favor of the trial court’s judgment so that its findings will not be disturbed absent palpable error. Martin v. Slayton, 428 So.2d 23, 25 (Ala.1983); Shepherd Realty v. Winn-Dixie Montgomery, 418 So.2d 871, 874 (Ala.1982).
The evidence presented to the trial court indicates the following: On October 28, 1980, Billy R. Frye purchased from New York Life Insurance Company a life insurance policy which provided whole life benefits in the face amount of $100,000 and an accidental death benefit in the additional amount of $100,000. His wife, Alva S. Frye (Mrs. Frye) was originally named as the first beneficiary under the policy, with the second beneficiaries being the children of Mr. and Mrs. Frye. However, on November 13, 1980, Mr. Frye executed a change-of-beneficiary form naming his mother, Daisy Frye Barnes (Mrs. Barnes), as the first beneficiary.
Mr. Frye was indicted by a federal grand jury for numerous drug violations in late 1981. Thereafter, Mr. Frye contacted his attorney, Mr. Shotts, concerning the feasibility of having Mrs. Frye operate Frye’s *843 business through a general power-of-attorney in the event of his absence.
Mr. Shotts advised Frye against such a move. Nevertheless, on March 19, 1982, Frye went to Shotts’s office and executed a general power-of-attorney. This instrument included the power to “place and effect insurance.” Mr. Frye took the original power-of-attorney to his office, leaving a signed, notarized copy with Shotts.
Upon arriving at his office, Frye had his secretary, Shirley Burnett, read the document to him. According to Burnett, Frye stated that he did not want his wife to have the power. He then tore the document into pieces, threw the pieces into the waste basket and instructed Ms. Burnett not to. mention the power to Mrs. Frye. Soon thereafter, Frye called Shotts’s office and told someone there that he had destroyed the power and requested that they draft a power which would give Mrs. Frye only the right to operate the business. Mrs. Frye came to Mr. Frye’s office later to get the power-of-attorney and Mr. Frye informed her that he had been unable to get it.
On April 12, 1982, Mr. Frye was confined to a federal facility in Springfield, Missouri, for a pre-trial evaluation.
On April 16, 1982, Mrs. Frye went to Shotts’s office and asked that she be given the executed copy of the power, which Mr. Shotts had retained. Although Mr. Frye had never directed Mr. Shotts to deliver any document to Mrs. Frye, Mr. Shotts gave her his file copy of the power. Mrs. Frye took the copy to the Jefferson County Probate Court and had it recorded.
After having the copy of the power recorded, Mrs. Frye took that copy to Mr. Earl Adair, Mr. Frye’s insurance agent, and through it sought to change the ownership of all of Mr. Frye’s life insurance policies and the named beneficiary of the policy involved in this action from Mr. Frye’s mother to herself. Mr. Adair allowed her to fill out the appropriate forms, and sent those forms, together with a copy of the power which Mrs. Frye had shown him, to New York Life’s home office for the company’s approval. The home office rejected the change of beneficiaries and returned the forms to Adair, stating that the power-of-attorney did not confer the authority to change the ownership of the insurance policies.
On May 7, 1982, Adair informed Frye of the beneficiary changes Mrs. Frye was attempting to make. Frye told Adair it was “fine” and to go ahead and make the changes. However, that same day, Frye talked with his attorney, Mr. Shotts. Three days later Frye wrote Shotts the .following letter:
“Dear Jesse:
“As per our phone conversation, last Friday in regard to Alva Frye having the power of attorney in my behalf, which you said would be void since I had destroyed the original, but as of this writing has caused me untold problems in my business and personal ventures and holdings. I want you to do what ever is necessary to relieve her of this document as soon as possible. I am hereby revoking this power of attorney, and will not, honour any contracts nor live up to any negotiations that has developed in my absence. Alva Frye has acted on her own without any authorization from me, nor have I deleted my ownership of any of my business, company nor personal holdings to anyone to act in my behalf. This I Bill Frye thus declares to be true and valid on this tenth day of May, 1982.
“Sincerely Yours,
“S/Bill Frye
“Bill Frye”
Finally, once New York Life’s home office rejected the aforementioned change of beneficiary and ownership requests made by Mrs. Frye, Mr. Adair mailed Mr. Frye the forms necessary to either change beneficiaries or to execute another power-of-attorney conferring the requisite authority. Although Adair spoke with Frye several times thereafter, Frye never made any attempt to change the status of any of his insurance policies.
Upon hearing the evidence, the trial court made the following findings of fact and conclusions of law:
*844 “ONE: The action of Mr. Frye on March 19, 1982, when he destroyed the original of the Power-of-Attorney before he delivered it to Mrs. Frye was sufficient to prevent the Power-of-Attorney from becoming effective, or in the alternative, to revoke the Power-of-Attorney.
“TWO: Mr. Frye did not re-execute the Power-of-Attorney, nor did he take sufficient action to ratify or reaffirm the previously executed copy of the Power-of-Attorney which was left in the file in his attorney’s office.
“THREE: Mr. Frye did not direct or authorize the delivery of the copy of the Power-of-Attorney by his attorney to Mrs. Frye.
“FOUR: The burden of proof was on Mrs. Frye to show a change of beneficiary by clear and convincing evidence and this burden was not met.
“FIVE: Mrs. Barnes is entitled to receive the proceeds of the Insurance Policy as, the named first beneficiary thereunder.”
After a careful review of the entire record, we find support for the trial court’s findings and conclusions, and we will not disturb them. Accordingly, the judgment below is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.

. Frye died on July 8, 1982, from a gunshot wound.